IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| KEITH J. ANTHONY, JR.,<br>    Plaintiff,<br><br>v.<br><br>LATOYA HUGHES, *et al.*,<br>    Defendants. | Case No. 1:25-cv-01456-JEH |

**Merit Review Order**

Plaintiff, proceeding *pro se* and currently incarcerated at Menard Correctional Center, filed a Complaint under 42 U.S.C. § 1983 alleging a deprivation of his constitutional rights while he was confined at Pontiac Correctional Center ("Pontiac"). (Doc. 1). This case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A.

**I**

In reviewing the Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 F. App'x 588, 589 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

II

Plaintiff files suit against the Illinois Department of Corrections ("IDOC"), IDOC Director Latoya Hughes, Warden Mindi Nurse, and Assistant Warden of Operations Christopher Forbes.

Plaintiff alleges he was incarcerated at Pontiac from August 20, 2021 until January 6, 2025. Plaintiff alleges the water at Pontiac was hazardous, contaminated, and toxic and posed a serious risk to his health. Plaintiff alleges he drank the water from the sink in his cell, as no other drinking water was available. Plaintiff claims he was indigent and unable to purchase bottled water from the commissary, and at times, was housed in the restrictive housing unit and not permitted to access the commissary.

Plaintiff alleges the water caused him to experience stomachaches, cramps, gas, bloating, diarrhea, constipation, migraines, shortness of breath, and fatigue. Plaintiff states he suffered a severe urinary tract infection and was hospitalized in October 2022. Plaintiff also claims the water caused him extreme mental and emotional anguish and caused him to contemplate suicide.

Plaintiff claims Defendants Nurse and Forbes were "fully aware of the hazardous drinking water" and failed to take action to remedy the issue. (Doc. 1 at p. 12). For instance, Plaintiff alleges Defendant Nurse allowed inmates in the general population to buy water bottles, which were exempt from Pontiac's commissary spending limit. Additionally, Defendants issued memorandums to inmates regarding the water and the closure of Pontiac's east and west cellhouses. Plaintiff claims Defendants IDOC and Hughes were aware of the contaminated water at Pontiac and failed to train and supervise their subordinates.

Finally, Plaintiff alleges the violation of his constitutional rights was caused by (1) "an official custom or policy," (2) "a widespread practice that, although not authorized by a written law or express policy, was so permanent and well settled

as to constitute a custom or usage with the force of law," or (3) "a person with final policymaking authority." *Id.* at p. 11.

### III

The Eighth Amendment requires the government to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). Conditions of confinement that expose a prisoner to a substantial risk of serious harm are unconstitutional. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). To demonstrate that prison conditions violated the Eighth Amendment, a plaintiff must allege facts that satisfy a test involving both an objective and subjective component. *Farmer*, 511 U.S. at 834.

The objective analysis focuses on whether prison conditions were sufficiently serious so that "a prison official's act or omission results in the denial of the minimal civilized measure of life's necessities," *id.*, or "exceeded contemporary bounds of decency of a mature, civilized society." *Lunsford v. Bennett*, 17 F.3d 1574, 1579 (7th Cir. 1994). The subjective component requires an allegation that prison officials acted wantonly and with conscious disregard of a known risk of serious harm to plaintiffs. *Id.* "Conscious disregard" means that defendants knew that plaintiffs faced a substantial risk of serious harm and yet disregarded that risk by failing to take reasonable measures to address it. *Farmer*, 511 U.S. at 847. Thus, it is not enough for the plaintiff to prove that defendants acted negligently or should have known of the risk. *Pierson v. Hartley*, 391 F.3d 898 (7th Cir. 2004). The plaintiff must show that defendants received information from which an inference could be drawn that a substantial risk existed and that defendants actually drew the inference. *Id.* at 902.

Plaintiff has adequately alleged that Defendants Nurse and Forbes knew about the contaminated drinking water, which caused Plaintiff to become severely ill, and failed to take action. Plaintiff's allegations are sufficient to proceed on an Eighth Amendment conditions-of-confinement claim against Defendants Nurse and Forbes.

Plaintiff also alleges a state law claim of intentional infliction of emotional distress ("IIED") against Defendants Nurse and Forbes. To prevail on an IIED claim under Illinois law, Plaintiff must show: "(1) the defendants engaged in 'extreme and outrageous' conduct; (2) the defendants 'either intended that [their] conduct would inflict severe emotional distress, or knew there was a high probability that [their] conduct would cause severe emotional distress'; and (3) the defendants' 'conduct in fact caused severe emotional distress.'" *McGreal v. Vill. of Orland Park*, 850 F.3d 308, 314 (7th Cir. 2017) (quoting *Zoretic v. Darge*, 832 F.3d 639, 645 (7th Cir. 2016)); *see also Dixon v. Cnty. of Cook*, 819 F.3d 343, 351 (7th Cir. 2016). "[E]motional distress alone is not sufficient to give rise to a cause of action. The emotional distress must be severe." *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006) (internal citations omitted). "Fright, horror, grief, shame, humiliation, worry, etc. may fall within the ambit of the term 'emotional distress,' these mental conditions alone are not actionable." *Id.* at 10. "Whether conduct is extreme and outrageous is judged on an objective standard, based on the facts of the particular case." *Dent v. Nally*, No. 16-00442, 2016 WL 2865998, at *4 (S.D. Ill. May 17, 2016) (citing *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001)). Plaintiff alleges he suffered severe emotional distress from being forced to consume hazardous drinking water. Plaintiff alleges he was in constant fear of contracting diseases from the water and frequently contemplated suicide because he was overwhelmed by the physical and mental pain caused by consuming the toxic

4

water. The Court finds Plaintiff's allegations are sufficient to proceed on an IIED claim against Defendants Nurse and Forbes.

Regarding Defendant Hughes, there is no *respondeat superior* liability under § 1983. Defendant Hughes cannot be liable based only on her supervisory position as IDOC Director. *See Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir. 2019). Officials are accountable for their own acts; they are not vicariously liable for the conduct of subordinates. *See Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009); *Vance v. Rumsfeld*, 701 F.3d 193, 203-05 (7th Cir. 2012) (en banc). Plaintiff does not allege that Defendant Hughes was personally involved in any constitutional violation. *See Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation."). Defendant Hughes is dismissed without prejudice for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and § 1915A.

The Eleventh Amendment bars Plaintiff's claim for damages against the IDOC, as the IDOC is not a "person" amenable to suit under § 1983. *See Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001); *Veal v. Illinois Dep't of Corr.*, No. 18-CV-0621-MJR, 2018 WL 3009265, at *2 (S.D. Ill. June 15, 2018). Therefore, the IDOC is dismissed from this action with prejudice.

Finally, Plaintiff attempts to allege a deliberate indifference claim against Defendants based on *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). "To establish municipal liability, a plaintiff must show the existence of an official policy or other governmental custom that not only causes but is the moving force behind the deprivation of constitutional rights." *Teesdale v. City of Chicago*, 690 F.3d 829, 833-34 (7th Cir. 2012) (internal quotation omitted). A plaintiff can establish an official policy through "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so

permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Est. of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 506, 515 (7th Cir. 2007) (citing *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007)). Plaintiff's conclusory allegations and formulaic recitation of the elements of a *Monell* liability are insufficient. *See Iqbal*, 556 U.S. at 678-79. Plaintiff's *Monell* claim is dismissed without prejudice.

IV

Plaintiff filed a Motion to Request Counsel asking the Court to appoint an attorney to represent him. (Doc. 3). "There is no right to court-appointed counsel in federal civil litigation." *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014). When evaluating a Motion to Request Counsel, the Court must consider: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007). "When evaluating a plaintiff's competence, district courts should normally consider the plaintiff's literacy, communication skills, education level, and litigation experience." *Bracey v. Grondin*, 712 F.3d 1012, 1018 n.3 (7th Cir. 2013) (citing *Pruitt*, 503 F.3d at 655). The inquiry is individualized, taking all the relevant facts into consideration, including the stage of the litigation. *Navejar v. Igiola*, 718 F.3d 692, 696 (7th Cir. 2013). The Court may also consider "the perceived merits of–or likelihood of success on–an indigent plaintiff's claims in its decision whether to allocate scarce pro bono counsel resources to the case before it." *Watts v. Kidman*, 42 F.4th 755, 764 (7th Cir. 2022).

Plaintiff attached letters from four law firms that declined to accept his case. (Doc. 3 at pp. 3-6). The Court finds Plaintiff made a reasonable attempt to secure counsel on his own. Although Plaintiff indicates he did not receive any high school

education, Plaintiff's Complaint was reasonably well-written and supported by relevant exhibits. (Doc. 1). There is no indication that Plaintiff has any physical or psychological condition that might impair his ability to litigate this case himself. The Court finds Plaintiff appears competent to litigate this case himself, especially at this early stage of the litigation process. Plaintiff's Motion is DENIED.

**IT IS THEREFORE ORDERED:**

1) According to the Court's Merit Review of Plaintiff's Complaint under 28 U.S.C. § 1915A, Plaintiff alleged sufficient facts to proceed on an Eighth Amendment conditions of confinement claim and a state law claim of intentional infliction of emotional distress against Defendants Mindi Nurse and Christopher Forbes based on the allegedly hazardous drinking water at Pontiac Correctional Center between August 20, 2021 and January 6, 2025. Additional claims shall not be included in the case above, except in the Court's discretion on motion by a party for good cause shown under Federal Rule of Civil Procedure 15.

2) Defendant Latoya Hughes is DISMISSED WITHOUT PREJUDICE for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915A. Defendant IDOC is DISMISSED WITH PREJUDICE. The Clerk is directed to TERMINATE Defendants Hughes and IDOC.

3) Plaintiff's Motion to Request Counsel [3] is DENIED.

4) This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendants before filing any motions to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.

5) The Court will attempt service on Defendants by mailing a waiver of service. If Defendants fail to sign and return a waiver of service to the Clerk within

30 days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on Defendants and will require Defendants to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

6) Defendants shall file an answer within 60 days of the date the Clerk sends the waiver of service. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' position. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the answer is necessary or will be considered. If Defendants have not filed an answer or appeared through counsel within 90 days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter a scheduling order setting discovery and dispositive motion deadlines.

7) If Defendants no longer work at the address Plaintiff provided, the entity for whom Defendants worked while at that address shall submit to the Clerk Defendants' current work address, or, if not known, Defendants' forwarding address. This information shall be used only for effectuating service. Documentation of Defendants' forwarding address shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

8) This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defendants' counsel copies of motions and other documents that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed

with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

9) Defendants' counsel is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Defendants' counsel shall arrange the time for the deposition.

10) Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

11) Plaintiff shall be provided a copy of all pertinent medical records upon request.

12) Within 10 days of receiving from Defendants' counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to Defendants' counsel. The Clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

13) The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

*It is so ordered.*

Entered: February 13, 2026

s/Jonathan E. Hawley
U.S. District Judge